

**IT IS ORDERED as set forth below:**

**Date: July 6, 2026**

_Paul Baisier_
_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | | |
|---|---|---|
| In re: | : | |
| | : | CASE NO. **22-10965-PMB** |
| **3 KINGS CONSTRUCTION** | : | |
| **RESIDENTIAL LLC,** | : | |
| | : | CHAPTER 7 |
| Debtor. | : | |
| | : | |
| | : | |
| **GRIFFIN E. HOWELL, III**, | : | |
| **Chapter 7 Trustee,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | ADVERSARY PROCEEDING |
| v. | : | |
| | : | NO. **24-1021** |
| **AUTO-OWNERS** | : | |
| **INSURANCE COMPANY,** | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER GRANTING IN PART AND DENYING
## IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Griffin E. Howell, III, duly appointed Chapter 7 Trustee (the "Plaintiff" or the "Trustee")[1] for the Chapter 7 estate of 3 Kings Construction Residential, LLC (the "Debtor"), commenced this action by filing a *Complaint* herein on September 9, 2024 (Docket No. 1)(the "Complaint") against Defendant Auto-Owners Insurance Company (the "Defendant").   This matter comes before the Court on *Auto-Owners Insurance Company's Motion for Summary Judgment* filed on July 17, 2025, with attachments[2] (Docket No. 19)(the "Motion") by the Defendant.

## I.      **Background**

As alleged in the Complaint, the Trustee seeks to set aside and recover various transfers (the "Transfers") of money received by the Defendant and voidable and recoverable as follows: (i) as preferential transfers under 11 U.S.C. § 547 and § 550 in the amount of $13,589.21; (ii) as fraudulent transfers under 11 U.S.C. § 544, § 548, and § 550 and O.C.G.A. §§ 18-2-70, *et seq.* in the amount of $102,922.72; and finally, (iii) as unauthorized post-petition transfers under 11 U.S.C. § 549(a) and § 550 in the amount of $32,071.74, which were made to the Defendant by the Debtor through its insiders and principals.   On October 3, 2024, the Defendant filed *Auto-Owners Insurance Company's Answer* (see Docket No. 4).   The parties filed their *Joint Rule 26(f) Report*

---

[1] This case, filed as a voluntary petition under Subchapter V of Chapter 11 on September 7, 2022 (the "Petition Date"), created a bankruptcy estate consisting of the Debtor's property under 11 U.S.C. § 541 (the "Estate").   *See also* 11 U.S.C. § 1186 (Property of the Estate).   Under 11 U.S.C. § 1184, the Debtor was charged with certain fiduciary duties as a debtor-in-possession ("DIP") during the Chapter 11 case.   This case was later converted from a case under Chapter 11 to a case under Chapter 7 on February 23, 2023.   *See Order Granting Motion to Convert Case to Chapter 7* (Main Case Docket No. 89).   The Plaintiff was appointed as interim Chapter 7 Trustee pursuant to 11 U.S.C. § 701(a)(1).   The meeting of creditors under 11 U.S.C. § 341 was held telephonically and concluded on June 30, 2023, after which the Plaintiff became the permanent Chapter 7 Trustee herein pursuant to 11 U.S.C. § 702(d).

[2] These attachments included *Auto-Owners Insurance Company's Brief in Support of its Motion for Summary Judgment* ("Defendant's Brief in Support"), *Defendant Auto-Owners Insurance Company's Statement of Undisputed Material Facts* ("Defendant's Statement of Undisputed Facts"), *Defendant Auto-Owners Insurance Company's Notice of Filing Declaration of Jason Jerome* (the "Jerome Declaration"), *and Defendant Auto-Owners Insurance Company's Notice of Filing of Original Discovery*.

on December 20, 2024 (Docket No. 9), which was approved by the Court on January 14, 2025. *See Order on Rule 26(f) Report* (Docket No. 10).[3]

After the Motion was filed on July 17, 2025, on August 29, 2025, the parties filed a *Stipulation* (Docket No. 22)(the "Stipulation") in which they agreed that the Motion would be set aside and held in abeyance pending a request on notice by the Defendant that it be considered. The Stipulation further provided that if such a request was made, the Trustee would have ten (10) days to respond to the Motion.   Subsequently, on December 29, 2025, the Defendant filed and served *Defendant Auto-Owners Insurance Company's Notice Requesting Consideration of Motion for Summary Judgment* (Docket No. 23)(the "Notice Requesting Consideration"). The Trustee subsequently filed the *Trustee's Response to Motion for Summary Judgment by Defendant* on January 28, 2026 (Docket No. 24)(the "Trustee's Response").[4]   On February 10, 2026, Defendant filed *Auto-Owners Insurance Company's Reply Brief in Support of Motion for Summary Judgment* (Docket No. 25) ("Defendant's Reply").   The Trustee then filed *Plaintiff's Sur-Reply to Defendant's Brief on Motion for Summary Judgment* on March 6, 2026 (Docket No. 30)(the "Trustee's Sur-Reply").[5]

---

[3] The parties thereafter filed a *Joint Motion to Amend the Rule 26(f) Order* on May 15, 2025 (Docket No. 14), seeking to extend the discovery period and other pretrial deadlines that was approved by *Order* entered on June 20, 2025 (Docket No. 16).   A subsequent *Joint Motion to Amend the Rule 26(f) Order* was filed on July 16, 2025 (Docket No. 18), seeking a further extension, which was approved by *Order* entered on July 18, 2025 (Docket No. 20)(the foregoing Orders, collectively, the "Scheduling Order").

[4] Attached to the Trustee's Response is the *Declaration of Robert Albretsen* (the "Albretsen Declaration").   Mr. Albretsen is an accountant employed by the Trustee who has offered extensive testimony in this case following his detailed examination and analysis of the Debtor's financial records.   He is also a certified fraud examiner.

[5] Previously, the Trustee filed his *Request for Authority to Issue Sur-Reply* on February 16, 2026 (Docket No. 26) that the Court granted by its *Order on Request for Authority to Issue Sur-Reply* on February 20, 2026 (Docket No. 28).

**II.      Timeliness of Trustee's Response and Analysis of Excusable Neglect**

As a preliminary matter, the Defendant asserts that the Trustee effectively admitted the facts the Defendant relies upon in the Motion since he did not file a response to the Motion within twenty-one (21) days of its filing.  *See* Defendant's Reply, pp. 2-3, citing BLR 7007-1(c).  As noted above, the Stipulation later provided that the Trustee would have ten (10) days to respond once the Defendant filed a Notice Requesting Consideration of the Motion, which it did on December 29, 2025.  Although the Trustee did file the Trustee's Response, it was filed after the ten-day period referenced in the Stipulation expired on January 13, 2026.[6]  The Defendant further contends that the Trustee may not rely on his tardily filed Trustee's Response to create issues of fact without evidence or seek to revive theories of recovery not preserved in the Scheduling Order.[7]  Consequently, it urges the Court to treat the Defendant's Statement of Undisputed Material Facts as not properly controverted, disregard any late-raised theories and argument by the Trustee, and grant the Motion.  *See* BLR 7056-1(a)(2).

The Trustee counters that the Trustee's Response should be considered by the Court under the doctrine of excusable neglect.  He states that his delay in responding resulted primarily from the fact that during the 10-day response period triggered by the filing of the Notice Requesting Consideration, Trustee's counsel's entire legal office was incapacitated and unable to work for several weeks due to an outbreak of bacterial pneumonia.  The Trustee maintains that he has proceeded in good faith throughout this litigation in conducting his affairs and never sought an

---

[6]  As noted above, the Trustee's Response was filed on January 28, 2026.

[7]  This reference is not entirely clear, and, in any event, the Scheduling Order does not limit the issues to be addressed.

undue advantage from the delay experienced due to his untimeliness in responding to the Motion. *See* Trustee's Sur-Reply, pp. 10-13.

As an initial matter, it is not clear for several reasons that there was an operative deadline for the Trustee's response to the Motion.  First, by agreeing to the Stipulation asking that the Motion be held in abeyance at a time when the Plaintiff's response was already overdue under the applicable rules, the Defendant in no way preserved its right to assert the failure of the Trustee's to respond timely prior to that time.  Instead, the Defendant agreed that the Trustee could have additional time, after it filed a notice, to file a response.  In those circumstances, any argument that the response was already untimely and thus facts could not be controverted in a subsequent response was waived.  Further, as to the purported new deadline so established, the parties requested in the Stipulation that it be made an Order of the Court, presumably to render the deadline meaningful.  However, that request was never followed up on, and the Stipulation was never made an Order of the Court, such that the deadline was not one ordered by this Court.

Finally, even if the January 13, 2026, deadline was an operative deadline, the Trustee's failure to meet it will be excused for the reasons that follow.  As authorized by Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 9006(b)(1)(B), for cause shown, the Court may permit an act that was required to be done within a specified period to be completed after the time has expired "where the failure to act was the result of excusable neglect."[8]  The United States Supreme Court clarified the meaning of "excusable neglect" under F.R.B.P. 9006(b)(1) in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993).  In *Pioneer*, the Court acknowledged that

---

[8] Application of this analysis is warranted in these circumstances, but again, the "deadline" at issue was not imposed by "these rules, a notice under these rules, or a court order."   F.R.B.P. 9006(b)(1).

although the term "neglect" as used in the rules does not "inflexibly" exclude every "instance of an inadvertent or negligent omission," still, such neglect must be "excusable."   507 U.S. at 394-95.

The Court set forth an analysis guided by equitable concerns and a consideration of the circumstances in connection with an omission or failure to act timely.   The factors to be weighed include the following: "'the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Pioneer, supra*, 507 U.S. at 395, quoted in *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir. 1996).

Since a "determination of excusable neglect is an equitable one," an evaluation of each factor is appropriate.   *Valdez v. Feltman (In re Worldwide Web Sys., Inc.)*, 328 F.3d 1291, 1297 (11th Cir. 2003).[9]   Thus, it is "a flexible standard that takes 'into account all the relevant circumstances' and is not a mechanical test."   *Petite v. MedCross Imaging, LLC (MedCross*

---

[9] In *Valdez, supra*, the Eleventh Circuit stated that the absence of prejudice alone is insufficient, and the court must also consider meritorious defense as well as a good reason for failing to respond.   *Id.* at 1297.   In that case, the court affirmed the denial of a motion to set aside a default judgment under F.R.C.P. 60(b)(1) on grounds of excusable neglect because the moving party failed to satisfy the latter two requirements.   *Id*. at 1297-98.   As the court stated:

> Valdez is correct that in *Cheney* we acknowledged that the Supreme Court in *Pioneer*…accorded primary importance to the absence of prejudice and to the interest of efficient judicial administration in determining whether the district court had abused its discretion. *Cheney,* 71 F.3d at 849–850. While the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration are of "primary importance," the *Pioneer* and *Cheney* decisions do not alter the fact that a determination of excusable neglect is an equitable one that necessarily involves consideration of all three elements—a meritorious defense, prejudice, and a good reason for not responding to the complaint—and not, as Valdez argues, exclusively prejudice.

*Valdez, supra*, 328 F.3d at 1297.   Therefore, all three (3) factors must be considered.

*Imaging, LLC)*, 2023 WL 4111563, *5, 2023 Bankr. LEXIS 1603, at *17 (Bankr. N.D. Ga. June 21, 2023).   Further, "[w]hen considering the reason for the delay, excusable neglect 'may include, when appropriate, late filings caused by inadvertence, mistake, or carelessness under certain circumstances.'"  *MedCross, supra*, 2023 WL 4111563, at *5, quoting *Locke v. SunTrust Bank*, 484 F.3d 1343, 1346 (11th Cir. 2007).   In *Cheney, supra,* 71 F.3d 848, the Eleventh Circuit applied the *Pioneer* analysis to F.R.C.P. 60(b) and reversed the denial of relief where a breakdown in communication between a party's own counsel led to the failure to meet a deadline to seek a new trial by six (6) days.   In that case, the court noted the lack of prejudice to the nonmoving party in granting relief, the minimal extent of the delay, the absence of bad faith, and the failure amounting to innocent oversight or carelessness by counsel as opposed to a deliberate disregard of the rules.   71 F.3d at 850.

Applying these standards, the Court concludes that although the Trustee's Response was filed fifteen (15) days after the purported due date and thirty (30) days after the Defendant filed its Notice Requesting Consideration, this late-filed pleading will be allowed and considered.   The Defendant has not shown any prejudice that it has endured based on the delayed response. Although not insignificant, a two (2) week delay in this matter is not overly concerning, especially in view of the reason for the delay and the length of time that this matter has been pending overall.[10] As represented in the Trustee's Sur-Reply, the delay was based on a debilitating illness contracted by counsel and attorney error, which the Court finds to be adequate as a reason in the

---

[10]  By January of 2026, this case had been pending for roughly sixteen (16) months, an extended period facilitated in part by the various extensions of time agreed to by the parties.  *See note 3, supra*.   The Stipulation alone ultimately involved a roughly four (4) month delay in the case.

circumstances.   On review, there also does not seem to be any credible suggestion of bad faith or

attempt to obtain an undue advantage from the delay, and as discussed in more detail below, certain

of the Trustee's claims appear to have sufficient merit such that he should be allowed to prosecute

them based on the allegations in the Complaint.

### III.   Defendant's Motion for Summary Judgment

#### A.  Defendant's Statement of Facts

Among other things, the Defendant asserts in the Defendant's Statement of Undisputed

Facts that the premium payments constituting part of the Transfers in the amount of $78,166.33

were made more than ninety (90) days before the Petition Date.   The Defendant also states that it

issued various insurance policies to the Debtor, including commercial general liability coverage

for which the Debtor paid premiums in the course of operations of its construction business.   This

insurance coverage, however, did not include any automobile policies.   Instead, the Defendant

asserts that Owners Insurance Company ("Owners"), which the Defendant claims is a separate

subsidiary insurer of the Defendant, issued the commercial automobile policies for which the

Debtor paid $47,216.21 in premiums (as part of the Transfers).

The Defendant adds that these premiums were paid in the ordinary course of business and

were made for new value received.   It also states that Tony Harris, Sr. ("Mr. Harris"), the Debtor's

principal, testified at the Section 341 Meeting of Creditors in this case that the insured vehicles

were used in the Debtor's business.[11]   Further, in responding to the Defendant's Interrogatories,

---

[11] This testimony, while possibly relevant as evidence (*but see infra* note 12), is not an admission that is binding on
the Trustee.   The Court has not found any case authority that supports the notion that a trustee would be bound, as
the Defendant suggests.   The apparent absence of such authority makes sense since a case trustee and a debtor stand
in a potentially adversarial relationship, in that the trustee may need to challenge a debtor's statements or testimony

the Defendant notes that the Trustee failed to identify any persons involved in authorizing or directing the Transfers in support of his allegation that they were insiders.   It further claims the Trustee also did not identify any actual or constructive fraud on the part of either the Defendant or Owners.   *See* Defendant's Statement of Undisputed Facts.

### B.   Trustee's Response

The Trustee relies on the detailed factual allegations offered in the Complaint and the statements of Mr. Albretsen in the Albretsen Declaration.   As summarized (*see* Trustee's Response, pp. 2-3), the Trustee contends that the only undisputed facts are that the Debtor made certain insurance premium payments to the Defendant as initial transferee for automobile insurance and that the Debtor did not own any vehicles.   Instead, the insured vehicles were owned by Mr. Harris individually.   It is otherwise apparent from the history of this case that Mr. Harris caused the Debtor to use its funds to pay various expenses for the benefit of Mr. Harris' family members (the "Insiders") and his other affiliate businesses.   Based on his assessment of the facts previously established in this case, witness testimony, and available business records, the Trustee states that Mr. Albretsen would testify, as stated in his Declaration, that there is no basis to relate or connect Mr. Harris' personal use of these vehicles with any corporate purpose of the Debtor. Trustee's Response, p. 2 & p. 9, citing Albretsen Declaration, ¶¶ 9-19.

The Trustee also asserts that any statements by Mr. Harris that the vehicles were used in the Debtor's business lack supporting detail.   Further, the Trustee contends that the Defendant's sole reliance upon Mr. Harris' testimony during his Section 341 Meeting to establish Debtor

---

in bringing an action for recovery of assets for the benefit of the bankruptcy estate and creditors whose interests the trustee represents.

benefit from the Transfers fails, as this Court has already found Mr. Harris' testimony lacks credibility.[12]   The Trustee adds that no claims were ever made by the Debtor on the insurance policies at issue.   The Trustee further states that Mr. Harris has either failed or refused to turn over to the Trustee any records that would show whether and to what extent the subject vehicles for which insurance coverage was obtained were ever used for the benefit of the Debtor in the conduct of its business affairs as Owners claims.   Trustee's Response, p. 3.

The Trustee also states that he will amend his Complaint to abandon all claims premised upon payments for insurance policies other than those pertaining to automobile insurance coverage maintained on personal vehicles of insiders of the Debtor and paid for by the Debtor.   Trustee's Response, p. 4.[13]   The Trustee acknowledges that the Defendant maintains this amount totals $47,216.21 in premiums paid by the Debtor through Defendant to Owners on the commercial automobile insurance policies, but he does not concede that this amount is correct and asserts it is subject to evidence of payment allocation among all the policies. Trustee's Response, p. 7, ¶ 9; Trustee's Sur-Reply, p. 5.   *See also* Defendant's Brief in Support, p. 7; Jason Declaration, ¶¶ 10

---

[12] Here, the Trustee urges the Court to take judicial notice of its own findings regarding contempt and the numerous misrepresentations made by Mr. Harris in this case.   Trustee's Response, pp. 12-14.   The Trustee also states that when witness credibility is at stake it may not be determined on summary judgment and all inferences should be drawn in favor of the non-moving party.   As reflected on the docket in this case, the Court entered an *Order Granting in Part and Denying in Part and Application for Entry of Default Judgment Against Defendants and Addressing Related Requests for Relief by the Parties in Docket Nos. 109, 110, 113, 115, 122, & 137* (Docket No. 138)(the "Order Granting Default")(Adversary Proceeding No. 23-1007, *Griffin Howell, Trustee and The United States v. Tony Harris, Sr., et al.*), that contains various findings of fact and conclusions of law regarding, among other things, Mr. Harris' lack of credibility as a witness and Mr. Harris' liability in causing certain fraudulent transfers in connection with his management of the Debtor's business and control of its property.

[13] Such an amendment to the Complaint is not necessary, as the Court will grant the Defendant's Motion to that extent in this Order.

& 11; Defendant's Statement of Facts (various insurance policy related documents attached thereto as Exhibits).[14]

Without offering contrary evidence, the Trustee takes issue with the Defendant's contention that the subject auto policies were issued by Owners, which as noted above the Defendant asserts is a separate corporate entity.  As for its argument that Owners should have been, but was not, timely added to this action as the true party in interest and may not be added now, the Trustee maintains that he still may amend the Complaint to do so.[15]

On review, however, because the Defendant allegedly first received the payments constituting the Transfers, it would be an "initial transferee," and it would not be necessary to add Owners as a defendant herein as the party "for whose benefit" the Transfers were made.[16]   Section 550(a) governs the scope of recovery regarding the transferee(s) of an avoided transfer, and it provides as follows:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the

---

[14] The Defendant disputes the Trustee's ability to amend and add Owners at this late date as well as the Trustee's "attempt" to create a fact issue with respect to how the Defendant allocated the Transfers.  *See* Defendant's Reply.

[15] The Defendant's argument that the Trustee cannot succeed in amending the Scheduling Order (Defendant's Reply, pp. 7-9) is more properly considered if the Trustee actually files a motion for authority to do so in connection with seeking leave to amend his Complaint to add Owners as a party defendant.   The Defendant states that the Trustee is somehow improperly trying to keep multiple avoidance theories in play.   It states that because the Trustee limited his discovery response to an interrogatory regarding preferences to "preferences," the Trustee cannot attempt a "late pivot" to include other avoidance theories targeting payments made outside the ninety (90) day preference recovery window.   The Court does not find this contention persuasive.   The response at issue does not constitute an admission that all other theories of recovery are thereby waived.   Allegations of fraudulent conveyance and preferential transfers are separate theories of recovery, and the Trustee is clearly seeking both.   Defendant's Reply, pp. 6 & 12; Trustee's Sur-Reply, p. 7.

[16] *See generally In re Int'l Admin. Servs*., 408 F.3d 689, 704 (11th Cir. 2005)(addressing related issue, court held that recovery against subsequent transferee not precluded by failing to first sue initial transferee).

property transferred, or, if the court so orders, the value of such property, from—

(1) *the initial transferee* of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a)(emphasis supplied).   Consequently, the Trustee can recover from the Defendant as the initial transferee without suing Owners, the party that allegedly provided the relevant auto policies and that allegedly was the ultimate recipient of the funds.

The Trustee disputes the Defendant's statement that payments made by the Debtor to Owners total $47,216.21 because this figure is based on an allocation of a larger payment that he does not concede is correct.   Defendant's Statement of Facts, ¶ 12; Jerome Declaration, ¶ 11. Thus, he disputes any claim that the Defendant did not receive any part of the Transfers or how the Transfers were allocated among the various insurance policies and further contends no evidence has been presented on these issues.   Trustee's Response, p. 7.

On this point, the Defendant counters that the fact $47,216.21 was paid to Owners is supported by the sworn testimony offered in the Jerome Declaration.   Further, it argues that the Trustee cannot create a fact issue based on a "failure of proof" claim when he admits the fact purportedly in issue (the amount attributed to Owners) but presents no countervailing evidence of his own.   Defendant's Reply, p. 5.

In any event, the Trustee asserts that it is beyond question that the Defendant may be liable as an initial transferee of the Transfers and that they may be recoverable from it by virtue of 11 U.S.C. § 544, § 548, and § 550(a) and O.C.G.A. §§ 18-2-70, *et seq*.   Trustee's Response, pp. 5-6. The Trustee adds that since the Defendant is the moving party on the Motion, the Defendant will

need to provide more information regarding the timing of the Transfers and how they were in fact allocated or credited between the Defendant and Owners.[17]   Trustee's Response, pp. 6-8.[18]

The Trustee also challenges the statements offered in the Jerome Declaration on grounds that they are not competent evidence because Mr. Jerome is an attorney with no personal knowledge of the facts or transactions identified therein.   *See Sitts v. United States*, 811 F.2d 736, 742 (2d Cir. 1987), *holding modified by Einaugler v. Supreme Ct. of State of N.Y.*, 109 F.3d 836 (2d Cir. 1997).   Mr. Jerome states that he is an employee of the Defendant.   The extent to which he reviewed the records and other information presumably prepared by others and on which he based his declarative statements is not disclosed and he has not been offered as an expert.[19]

---

[17] Again, the Trustee attempts to clarify his position that although he is seeking to narrow the issues, he is only conceding the alleged amount of $47,216.21 as a material fact in terms of the amount paid for the automobile policies through the Transfers.   The Trustee maintains, however, that further detail is needed concerning the timing of the payments and how they were in fact allocated or credited against the automobile policies.   Until then, he argues that the precise amount of premium payments on automobile insurance that is voidable cannot be determined.   Trustee's Response, pp. 5-7.   The Defendant takes issue with the Trustee's attempt to "reserve an unspecified 'allocation' point" as sufficient to create a genuine issue of fact.   Defendant's Reply, p. 5.

[18] As previously mentioned, the Trustee disputes that the Debtor received any benefit from the Transfers as the possible basis for an affirmative defense by the Defendant, since there are no facts showing evidence of actual use or benefit conferred other than the disputed testimony of Mr. Harris.   The Trustee adds that the Defendant has produced no evidence of facts showing that the Transfers were made in the "ordinary course of business," and asserts they did not benefit the Debtor based on the statements of his expert, Mr. Albretsen.   Trustee's Response, pp. 9 & 11. The ordinary course defense, however, may or may not be difficult to establish in a business like the Debtor that was riddled with fraud.   *See e.g. In re Buehler*, 2022 WL 837914, at *3 (Bankr. N.D. Iowa Mar. 21, 2022), quoting *Harder v. JPPCS, Inc. (In re Graff)*, 454 B.R. 745, 751 (Bankr. W.D. Mo. 2011)("'Even if the debtor' business transactions were irregular, they may be considered 'ordinary' for purposes of § 547(c)(2) if those transactions were consistent with the course of dealings between the particular parties'"); *but see Danning v. Bozek (In re Bullion Reserve of North America)*, 836 F.2d 1214, 1219 (9th Cir. 1988)(holding in the case of investors, Code § 547(c)(2) is not a defense to a preference action where the transfer was made by a "fraudulent business"), as cited in *In re Bennett Funding Grp., Inc.*, 253 B.R. 316, 322 (Bankr. N.D. N.Y. 2000).

[19] *See* note 27, *infra*.

Finally, the Trustee maintains that, along with the fact of the Debtor's funding the Transfers and the Defendant's receipt as transferee,[20] it is undisputed that the Debtor was insolvent during the relevant statutory period.   Relying on past testimony in this case, the Trustee further contends that insiders of the Debtor engaged in a continuing pattern of fraudulent activity that is indicative of both actual fraudulent intent and constructive fraud.[21]   The Defendant has not addressed this latter contention regarding the insiders' pattern of behavior.

### C.  Legal Standard for Summary Judgment

Summary judgment may be granted pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 56, which is made applicable herein by Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 7056, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   F.R.C.P. 56(a).   In deciding a motion for summary judgment, the court "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The initial burden of proving the absence of dispute as to any material fact rests with the moving party.   *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).   To meet this initial burden, the moving party must identify "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

---

[20] This assertion is disputed by the Defendant, although it does not specify whether that means it disputes receiving any payments at all or that it merely paid these amounts over to Owners.

[21] Here, the Trustee refers to various court testimony produced during trial in this bankruptcy case and the Albretsen Declaration.  *See* Trustee's Response, pp. 11-14.

14

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(internal quotations omitted). Once the party seeking summary judgment has identified those materials demonstrating the absence of a genuine issue of material fact, the non-moving party cannot rest on mere denials or conclusory allegations. Instead, the non-moving party must instead go beyond the pleadings and designate, through proper evidence such as by affidavits or personal knowledge or otherwise, specific facts showing the existence of a genuine issue for trial. *See* F.R.C.P. 56(c) & (e); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Johnson v. Fleet Finance Inc.*, 4 F.3d 946, 948-49 (11th Cir. 1993); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993).

Here, because the Defendant will not bear the burden of proof at trial, it can carry its initial burden on its Motion first, by showing that there is insufficient evidence to support the Trustee's case as the non-moving party, or second, by offering positive evidence that demonstrates the Trustee will not be able to prove his case at trial. *See Standard Fire Ins. Co. v. Knowles*, 129 F. Supp. 3d 1271, 1274–75 (N.D. Ala. 2015), citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993). When this burden is satisfied, the nonmoving party may not then rely on allegations or denials stated in its own pleadings (F.R.C.P. 56(e)) but must present specific facts demonstrating the existence of a genuine dispute concerning material facts in issue. *In re White*, 2017 WL 3278842, at *2 (Bankr. N.D. Ga. Aug. 1, 2017), citing *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

All reasonable doubts should be resolved in favor of the non-moving party, and "[i]f reasonable minds could differ on any inferences arising from undisputed facts, summary judgment should be denied." *Twiss v. Kury*, 25 F.3d 1551, 1555 (11th Cir. 1994)(citing *Mercantile Bank &*

15

*Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).   In addition, deciding issues

of credibility or state of mind or intent are not appropriate in ruling on summary judgment.   *Atl.*

*Specialty Ins. Co. v. Newson*, 672 F. Supp. 3d 1346, 1348 (N.D. Ga. 2023), *appeal dismissed sub*

*nom. Newson v. Hernandez*, 2023 WL 8316397 (11th Cir. Aug. 9, 2023), citing *Stewart v. Booker*

*T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000).

### D.  Analysis

1.  Voidable Preferences

To avoid the Transfers as preferential under Section 547(b), the Trustee must show under

Count I of the Complaint that they were: (1) "to or for the benefit of a creditor," (2) "for or on

account of an antecedent debt owed by the debtor before such transfer was made," (3) "made while

the debtor was insolvent," (4) "made on or within 90 days before the date of the filing of the

petition," and (5) enabled the defendant to receive more than it would have received in a

hypothetical Chapter 7 liquidation if the transfer had not been made.   11 U.S.C. § 547(b).[22]   The

Defendant contends the Trustee has not satisfied and cannot satisfy the timing element of this test

regarding all the Transfers.   It also relies on certain affirmative defenses under Section 547(c)(1)

and (2) such as contemporaneous exchange for new value and ordinary course of business.[23]

On review, it does not appear either that the Defendant has shown that there is insufficient

evidence to support the Trustee's case or that it has offered evidence demonstrating that the Trustee

---

[22] The burden of proving each of the above elements falls on the Trustee. 11 U.S.C. § 547(g).   The Defendant does not appear to contest any elements other than the timing of the Transfers and whether they fall within the ninety (90) day avoidance period.

[23] The Defendant, of course, bears the burden of proving these defenses under Section 547(g).

16

will not be able to prove his preference claim at trial.  From the pleadings of record, it appears that the Trustee may properly proceed to prove his assertion of an avoidable preferential transfer to Owners as the ultimate beneficiary of such payments on the automobile policies, and that the Defendant initially received the Transfers, however they were finally allocated.  Based on the above legal standard, it has not been shown by the Defendant that the Trustee cannot prove through proper evidence that, during the preference period, Owners received more than it would have otherwise received in a liquidation on its debt based on the Transfers made during the Debtor's insolvency.

Further, there appear to be issues of fact regarding Defendant's assertion of affirmative defenses.  For instance, the Defendant has not shown undisputed facts establishing that the Transfers were made "in payment of a debt incurred by the debtor in the ordinary course of business."  *See* 11 U.S.C. § 547(c)(2).  Although the Defendant may have quantified the amounts paid on the automobile policies, there is an absence of evidence regarding payment and invoicing dates and how each portion of such payments was credited toward the automobile policies.  *See* Trustee's Response, p. 6.  Similarly, issues of fact remain concerning Defendant's assertion that the Transfers provided "value" under Section 547(c)(1) or (c)(4) because even though insurance is arguably "valuable," it has not been established that the Defendant is entitled to judgment on this affirmative defense.   Here, a proper basis has not been shown to explain why it was necessary to the Debtor's business that it pay to insure vehicles used by the Insiders for personal matters such that it received any value or benefit through the Transfers to the extent used to pay premiums for the automobile policies.  *See* Trustee's Response, pp. 16-17.

17

2. Fraudulent Transfers

As set forth in Count II, the Trustee seeks to avoid the Transfers as fraudulent under several legal theories.   The Trustee may seek to void the Transfers as fraudulent conveyances pursuant to Section 548(a)(1)(A) for actual fraud, or for constructive fraud under Section 548(a)(1)(B).   These subsections provide as follows:

> (a)(1) The trustee may avoid any transfer…of an interest of the debtor in property, or any obligation…incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>     (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>     (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>     (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>     (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; [or]
>     (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured….

11 U.S.C. § 548(a)(1)(A) & (B)(emphasis supplied).

Next, the Trustee seeks to use Georgia's Uniform Fraudulent Transfer Act ("UFTA") as a basis for avoiding the Transfers.   *See* O.C.G.A. §§ 18-2-70, *et seq*.   The Trustee first relies on the standing and powers conferred upon him under 11 U.S.C. § 544(a) as a hypothetical creditor extending credit to the Debtor as of the Petition Date and obtaining a judicial lien or an execution against the Debtor.   Here, the Trustee may seek to void transfers made with actual fraudulent intent as provided under applicable Georgia law.   *See* O.C.G.A. § 18-2-74(a)(1).   To determine whether the Debtor acted with actual intent, "consideration is given to an open-ended set of factors

18

listed in O.C.G.A. § 18–2–74(b), which are commonly called the 'badges of fraud.'"   *In re White*,

2017 WL 3278842, at *3 (Bankr. N.D. Ga. Aug. 1, 2017).

As further alleged by the Trustee, the Transfers may also be set aside as constructively

fraudulent under O.C.G.A. § 18-2-74(a)(2).[24]   To succeed on this claim, the Trustee would need

to show that the Debtor made the Transfers while insolvent and "without receiving a reasonably

equivalent value in exchange" or fair consideration.   O.C.G.A. § 18-2-74(a)(2).[25]   In addition,

under 11 U.S.C. § 544(b), to the extent the Trustee can identify a creditor in existence at the time

of the Transfers holding an unpaid allowed unsecured claim, he may avail himself of certain

remedies provided by applicable law.[26]

---

[24]  With respect to the statute of limitations period, Georgia law provides as follows:

> A cause of action with respect to a fraudulent transfer or obligation under this article is extinguished unless action is brought:
>
> (1) Under paragraph (1) of subsection (a) of Code Section 18-2-74, **within four years** after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;
>
> (2) Under paragraph (2) of subsection (a) of Code Section 18-2-74 or subsection (a) of Code Section 18-2-75, **within four years** after the transfer was made or the obligation was incurred; or
>
> (3) Under subsection (b) of Code Section 18-2-75, within one year after the transfer was made or the obligation was incurred.

O.C.G.A. § 18-2-79 (emphasis supplied).

[25]  O.C.G.A. § 18–2–74(a)(2)(B) substantially mirrors the constructive fraud claims under the Bankruptcy Code.  *See* 11 U.S.C. § 548(a)(1)(B).

[26]  For instance, O.C.G.A. § 18–2–75 provides that a transfer will be voidable as to a creditor whose claim arose before the transfer where "the debtor made the transfer...without receiving reasonably equivalent value in exchange for the transfer...and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer...." O.C.G.A. § 18–2–75(a).  *See In re Palisades at W. Paces Imaging Ctr., LLC*, 501 B.R. 896, 908 (Bankr. N.D. Ga. 2013).   The Trustee, however, did not assert this state law provision as a ground for relief.

On review, the Defendant has not shown a lack of evidence to support the Trustee's claims as to some items and has not offered evidence demonstrating that the Trustee will be unable to prove his case at trial on this count.   Issues of fact remain pertaining to the Debtor's receipt of reasonably equivalent value in exchange for the Transfers based on actual usage of the subject vehicles and benefit to the Debtor as well as actual fraud.

With respect to the arguments set forth in the Defendant's Reply and rebuttals in the Trustee's Sur-Reply, the Defendant has asserted that the Trustee cannot create an issue of fact through his conclusory insistence that the *Defendant* issued the policies or was the payee on the Transfers.   As noted above, the Defendant objects to any attempt by the Trustee to defeat the Motion by attempting to raise an issue regarding allocation of payments.   Here, the Defendant states the Trustee has failed to point to any evidence supporting such claim or the rendering of a judgment against the Defendant.   It adds this conclusion is especially warranted when the issuer of the policies and payee of the premiums have already been shown by undisputed evidence not to be the Defendant—but a separate insurer and non-party herein.   Defendant's Reply, pp. 4-5.

As averred in the Jerome Declaration,[27] Owners issued the commercial automobile insurance policies, and the Defendant issued the non-automobile related insurance policies.   The

---

[27] The Trustee takes issue with Mr. Jerome's personal, first-hand knowledge as a basis for his statements presumably because as in-house counsel, he was not the person responsible for receiving and allocating premium payments and otherwise maintaining records pertaining thereto.   Although the substance of Mr. Jerome's statements may be inadmissible as hearsay or on some other ground at this stage, the statements may be considered if they could be reduced to admissible form at trial.   *See Rowell v. BellSouth Corp.,* 433 F.3d 794, 800 (11th Cir. 2005)("On motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form. *See Macuba v. Deboer,* 193 F.3d 1316, 1324–25 (11th Cir.1999)(although evidence that is otherwise admissible may be accepted in an inadmissible form at summary judgment stage, hearsay [there] could not be reduced to admissible form)). "[E]mployees are generally found to have personal knowledge of, and therefore may testify in relation to, records of their employers that they reviewed in their official capacities."   *In re Hilton*, 544 B.R. 1, 8-9 (Bankr. N.D. N.Y. 2016). In this context, however, even if the Court accepted the truth of these statements, it still must be shown who received the Transfers and how they were applied.

20

parties appear to contest the allocation of lump sum payments made on the automobile and non-automobile policies and/or both. The question of what part of each payment included in the Transfers goes to which policy remains a disputed issue of fact.[28]

Finally, as mentioned above, issues of witness credibility are not appropriate for evaluation on summary judgment. Based on the extensive history of this case and the Court's previous opportunities to observe Mr. Harris' on direct and cross-examination at trial, however, the Trustee is correct that the Court has previously determined Mr. Harris' testimony not to be credible and its utility in establishing disputed facts unreliable.[29]

3. Unauthorized Post-Petition Transfers

Finally, in Count III, the Trustee alleges that Insiders of the Debtor caused it to pay to the Defendant the amount of $32,071.74 during the post-petition period as part of the Transfers under 11 U.S.C. § 549(a). On review, the Trustee's claim is asserted within the time provided in Section 549(d), and the unauthorized post-petition transfers may be recovered from the Defendant *as a transferee* under Section 550(a) unless it shows it is entitled to a statutory defense.[30] The Defendant argues in response that "these payments were made in exchange for ongoing insurance

---

[28] The Defendant appears to be operating under the assumption that it can escape liability simply because the Transfers were either made directly to Owners or made their way to Owners from the Defendant as issuer of the automobile policies. Although the former may be true, as to the latter, however, as discussed above the Trustee has made a viable claim that under the theories of relief set forth in the Complaint, the Defendant may be found liable for recovery as an initial transferee of the Transfers under 11 U.S.C. § 550.

[29] Another related issue in this proceeding will be whether, and if so to what extent, the "law-of-the-case doctrine" applies with respect to this Court's prior findings of fact and conclusions of law in connection with Mr. Harris' intentional conduct in making the Transfers on behalf of the Debtor or the resulting consequences of same to the Debtor's financial condition. *See Mann v. GTCR Golden Rauner, L.L.C.*, 483 F.Supp.2d 864, 870 (D. Ariz. 2007); *see also United States v. Siegelman*, 786 F.3d 1322, 1327 (11th Cir. 2015).

[30] In the final count, Count IV, the Trustee seeks an accounting. It appears that this count remains as an issue to the extent necessary to determine how the Transfers were allocated.

coverage that protected the Debtor's assets and continued operations during the pendency of its bankruptcy case." Defendant's Brief, p. 18. As such, the payments contributed to the ongoing value of this bankruptcy estate as a routine business expense.

The Defendant has not shown that it is entitled to a defense that these payments were made in the ordinary course of business. Although insurance is obviously valuable, the Defendant has presented no undisputed facts demonstrating that the insurance coverage in issue conferred any benefit upon the *Debtor* as opposed to Insiders of the Debtor. As alleged by the Trustee, all the post-petition payments were made for automobile coverage. As discussed above, there is no competent evidence showing that the Debtor had an insurable interest in the subject vehicles or that they were used in the Debtor's business. Moreover, the Court never approved the making of such payments from property of the Debtor's bankruptcy estate for the personal benefit of third-party insiders in connection with their vehicles. *See* Main Case Docket *passim*.

## Conclusion

Based on the foregoing discussion, it is

**ORDERED** that the Motion is **GRANTED** to the extent that the Transfers were made to the Defendant as premium payments on insurance policies that were not automobile insurance policies. It is further

**ORDERED** that the Motion is **DENIED** to the extent that the Transfers were made to the Defendant as premium payments on the automobile insurance policies.

The Clerk is directed to serve a copy of this Order upon the Trustee, counsel for the Trustee, Defendant, counsel for the Defendant, and the United States Trustee.

**[END OF ORDER]**

22